# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

JULIE A. JOHNSON                                    Civil No. 06-4458 (RHK/FLN)

      Plaintiff,

v.                                                 **REPORT AND RECOMMENDATION**

MICHAEL J. ASTRUE
Commissioner of Social Security,

      Defendant.

---

Sean M. Quinn, Esq., 306 West Superior St., Suite 1200, Duluth, MN 55802, on behalf of Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, on behalf of Defendant.

---

Plaintiff Julie Johnson ("Ms. Johnson") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied her application for disability insurance benefits and social security income. See, 42 U.S.C. § 1382 (c). This Court has appellate jurisdiction over the claim pursuant to 42 U.S.C. § 405 (g). This matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. The parties have submitted cross-motions for summary judgment. [Dockets # 11 and # 18]. For the reasons set forth below, this Court recommends that Defendant's motion for summary judgment [Docket # 18] be granted and the Commissioner's decision be affirmed.

# I.  INTRODUCTION

In the summer of 1993, Ms. Johnson suffered a work-related injury while working as a housekeeper for St. Mary's hospital. (Tr. at 263.) Her work injury was to her dominant right wrist and forearm. (Tr. at 263.) Ms. Johnson alleges that she has been disabled since April 21, 2003 due to chronic pain, fatigue and depression. (Tr. at 17.)

# II.  STATEMENT OF FACTS

1.    Plaintiff's Background

Ms. Johnson was born on August 11, 1958 and was 46 years old at the time the ALJ's decision was issued. (Tr. at 24; 874.) She was 44 years old on April 21, 2003, the alleged disability onset date. (Tr. at 874.) She graduated from high school and had past relevant work experience as a nurse's aid. (Tr. at 24, 100, 105, 112, 895.) In April 2003, Ms. Johnson was laid off from her last job as an information clerk when that job was eliminated. (Tr. at 150, 913.)

2.    Procedural Background

Ms. Johnson filed applications for a period of disability, disability insurance benefits and supplemental insurance on August 18, 2003.  (Tr. at 17.) The applications were initially denied and upon reconsideration. (Tr. at 26-27; 30-34; 880.)  Ms. Johnson requested a hearing before an Administrative Law Judge on February 6, 2004. (Tr. at 17.) A hearing was held before Administrative Law Judge Mary Kunz on March 11, 2005 in Duluth, Minnesota.  (Tr. at 17.)  On July 23, 2005, the ALJ issued an unfavorable decision against Ms. Johnson. (Tr. at 14-24.)

Upon applying her factual determinations to the evaluation sequence required by Social Security Administration regulations, the ALJ concluded that: (1) the claimant met the disability insured status requirements of the Act on April 21, 2003, the date the claimant alleged she

became unable to work, and continues to meet them through December 31, 2008; (2) the claimant has not engaged in substantial gainful activity since April 21, 2003; (3) the claimant is severely impaired by status post right upper extremity surgeries, including carpal tunnel release, ganglion removal, tenosynovectomy, and radial tunnel releases and depression and/or an adjustment disorder with a depressed mood; (4) the medical evidence does not establish that the claimant has an impairment, or combination of impairments, that meets or equals the requirements of any impairment listed in the Listing of Impairments at 20 C.F.R., Subpart P, Appendix 1 of the Regulations; (5) the claimant's testimony with regard to her subjective symptoms and functional limitations was not fully credible due to significant inconsistencies in the record as a whole; (6) the claimant retains the residual functional capacity to perform a light level of work involving occasionally lifting up to twenty pounds, frequently lifting up to ten pounds, standing and/or walking for six hours in an eight-hour workday, sitting for two hours in an eight-hour workday, no more than occasional firm power gripping and unskilled work; (7) the claimant is 46 years of age, considered to be a younger individual, and she has a twelfth grade education; (8) the claimant is unable to perform her past relevant work as a nurse's aide because the demands of the job exceed her residual functional capacity; (9) considering the claimant's residual functional capacity, age, education, and past relevant work experience, she is able to make a vocational adjustment to work which exists in significant numbers in the national economy, examples of which are a collator, and inserting machine operator, a folding machine operator and bench work assembly; (10) the claimant was not under a disability, as defined by the Social Security Act, at any time on or before the date of this decision. (Tr. at 23, 24.)

The Social Security Administration Appeals Council denied a request for further review by notice dated October 13, 2006. (Tr. at 8-11.)  The denial of review made the ALJ's findings

the final decision of the defendant.  42 U.S.C. §405(g); Browning v. Sullivan, 958 F.2d 817, 822

(8th Cir. 1992); 20 C.F.R. § 404.981. Ms. Johnson initiated review of this action on November 8,

2006 [Docket #1]. The appeal to this court was brought pursuant to 42 U.S.C. 405 and 423. An

Order of Enlargement of Time was granted to Ms. Johnson on March 28, 2007. [Docket # 10]

She filed her Motion for Summary Judgment on April 6, 2007. [Docket # 11]  An Order for

Enlargement of Time was granted to the Commissioner on May 21, 2007. [Docket # 17]  The

Commissioner filed its Motion for Summary Judgment on May 2, 2007. [Docket # 19]

       3.    Medical Evidence

      The work- related injury occurred to Ms. Johnson in the summer of 1993. At first, Ms.

Johnson received some initial care from Dr. Henry at the St. Mary's Occupation Medicine

Department. (Tr. at 251-263.) Ms. Johnson was then sent to see Dr. Ted Downs, the head of the

Occupational Medicine Department at St. Mary's Hospital. Ms. Johnson's first visit with Dr.

Downs occurred on February 6, 1995, almost two years from the date of her injury. (Tr. at 250-

51.) In February 1995, Ms. Johnson underwent a right wrist arthrogram, which was normal but

did suggest a fibrotriangular cartilage tear. (Tr. at 250, 319.)

      Prior to her injury, between 1988 and 1995, Ms. Johnson had a series of injuries

occurring at home and at work after which she secured notes from physicians indicating she

needed to be off work. She complained of pain in her shoulder, back, arm, leg and ankle. (Tr. at

253, 256, 260-61, 263-64, 266-73, 175, 365-99, 400-01, 405, 409, 499)

      Ms. Johnson underwent surgery on May 2, 1995 for carpal release, closure of a broad-

based ganglion and partial tenosynovectomy of the flexor tendons. (Tr. at 242; 244.) She

continued to receive treatment post-surgically with Dr. Downs. (Tr. at 242.) She had eight

appointments with Dr. Downs between February 6, 1995 and October 13, 1995. (Tr. at 230 -

252.) Dr. Downs referred Ms. Johnson to Dr. Andrew Baertsch, who performed additional surgery on December 12, 1995 at St. Mary's Hospital. The surgery was to repair a right TFC ligament tear and right deQuerbain's tenosynovitis, an arthroscopy of the right wrist, debridement of the right triangular fibrocartilage and dorsal compartment release and tenosynovectomy. (Tr. at 410-11.)

Dr. Downs continued to treat Ms. Johnson, as well as get her involved in physical therapy in April 1996.  In August of 1996, Ms. Johnson underwent a functional capacity assessment. (Tr. at 457.) She had 5/5 normal right shoulder strength and 4/5 right elbow movements. She also had no cervical or thoracic abnormalities and normal spinal range of motion (Tr. at 457.) Ms. Johnson lifted between two and 7.5 pounds; she could repetitively bend, climb a ladder, reach overhead, had no problem sitting, had good leg endurance and strength and sitting tolerance. (Tr. at 458-59.) During the second day of the evaluation, she worked at a slightly faster pace and lifted slightly more weight. (Tr. at 459.) She was assessed as able to sit for six to seven hours, standing and walking were not tested. (Tr. at 463.) She could not lift more than 7.5 pounds, could not use her right hand repetitively for simple or firm grasping or fine manipulation and she could use her left hand repetitively. (Tr. at 464.)

There were limitations placed on Ms. Johnson's ability to work including the right hand carrying no greater than two pounds, overhead lifting of no greater than three pounds, lifting at the waist of no greater than 7.5 pounds, no simple grasping, firm grasping or fine manipulation with the right upper extremity. (Tr. at 463-64.) She reported pain and was given injections and medication, prescribed physical therapy and a splint to wear and was restricted to light duty of less than full-time work. (Tr. at 190, 197, 201-02, 205-15, 224-25, 227, 230, 236-37, 239, 410-11, 436, 444, 478, 485, 516-17.)

During 1997, Ms. Johnson continued to meet with Dr. Downs and was referred to a surgeon at the University of Minnesota Hospital. (Tr. at 206-221; 446-451.) She also had another surgery, additional visits with Dr. Baertsch, and further physical therapy. (Tr. at 216; 452-505.)

In April 1997, Dr. Call reviewed the medical evidence and performed a consultative examination of Ms. Johnson. (Tr. at 807.) Based on his review, he concluded that she had an aggressive surgical history for "largely subjective discomfort." (Tr. at 811.) He strongly felt that no further surgery should occur in the absence of "strong objective evidence of local pathology." (Tr. at 812.) He also indicated that Ms. Johnson had a disability rating of approximately five percent. (Tr. at 825.)

From 1997 to 2003, Ms. Johnson continued treatment with Dr. Downs conducting approximately 55 doctor visits in that time frame. She was prescribed Darvocet and Lortab medication for her pain. (Tr. at 160; 162; 164; 168; 173; 184; 187.) During this time period, she received additional EMG's (Tr. at 297-99; 300-01; 302-04; 305-06.), a chronic pain evaluation (Tr. at 506-09.), the use of adaptive devices at work (Tr. at 510.), additional surgical referrals (Tr. at 514-15.), a chronic pain program (Tr. at 540-52.), a referral for an electrical stimulator (Tr. at 586; 563; 670; 846; 856.) and a referral for a possible wrist fusion. (Tr. at 690-91.)

In December 1999, Dr. Downs put Ms. Johnson on chronic narcotic therapy. (Tr. at 153; 158.) Ms. Johnson has been on chronic OxyContin therapy since that time frame. (Tr. at 620-636; 832-863.)

In June 2002, Dr. Downs referred Ms. Johnson to Dr. Sheetz for an evaluation of her arm pain. (Tr. at 691.) Dr. Sheetz examined Ms. Johnson's arm and concluded that a wrist fusion would provide no benefit. (Tr. at 690.) Dr. Sheetz recommended that Ms. Johnson "increase her

use of her extremity and be referred to therapy for range of motion exercises and strengthening with no limitation." (Tr. at 690.)

In January 2003, the workers' compensation insurers sent Ms. Johnson for an adverse medical exam with Dr. Vorlicky, an orthopedic surgeon. He reviewed and discussed Ms. Johnson's medical records and performed an independent evaluation. (Tr. at 813.) Ms. Johnson reported she was unable to file or use a telephone and claimed that she could not use a headset phone due to "tensing". (Tr. at 815.) When asked the problem with her right arm, she responded that she had pain. (Tr. at 815-16.) Dr. Vorlicky concluded that Ms. Johnson had "full passive range of motion" with the right wrist. (Tr. at 816.) Dr. Vorlicky also concluded that Ms. Johnson had no forearm or thenar atrophy on either side, intact sensation and brisk and symmetric reflexes.  (Tr. at 816.) Dr. Vorlicky indicated that neither surgical treatment not pain management were recommended. (Tr. at 825.) The doctor further stated that Ms. Johnson had no need for orthopedic intervention. (Tr. at 825.) He also stated that it was "not clear to me why she cannot perform sedentary work and it really does not make sense to me that she cannot use the phone." (Tr. at 825.) Dr. Vorlicky concluded that he would not restrict her in anyway. (Tr. at 825.) He believed Ms. Johnson "may have some symptom magnification." (Tr. at 825.) Regarding Dr. Downs' opinion of disability, Dr. Vorlicky noted that "I can find no objective measures that would describe a loss of motion or weakness or loss of sensation, and she continues to have normal nerve conduction studies." (Tr. at 825.)

In May 2003, Dr. Downs stated that Ms. Johnson could perform sedentary work, but indicated she could not work more than four hours a day and she needed to avoid high torque or force with her right hand and wrist. (Tr. at 559.) Dr. Downs indicated he had no objection to her being on her feet, and felt she was stable with her medications and they would not interfere with

concentration. (Tr. at 559.) He also stated that Ms. Johnson suffers from chronic nerve damage with neuropathic pain or possibly complex regional pain syndrome type II, chronic pain syndrome and depression. (Tr. at 558-59.) He stated that her current treatment was OxyContin, Efexor, Amitriptyline and Prilosec to treat her pain and depression symptoms.

In October 2003 and January 2004, state agency physicians reviewed the medical evidence and concluded that Ms. Johnson could lift 20 pounds occasionally and ten pounds frequently; sit, stand and walk for six hours each; had limited ability to use her arms including the frequent use of left arm but occasional to frequent use of right arm for handling, fingering and feeling and no use of right arm for overhead reaching. (Tr. at 605.) They noted that Dr. Downs' opinion regarding Ms. Johnson's restrictions did not "correlate with imaging studies, EMG's or physician findings." (Tr. at 608.)

In February 2004, Dr .Downs completed a narrative report that recommended that Ms. Johnson would be a candidate for multi-disciplinary pain program as well as a trial of a spinal cord stimulator.

In July 2004, Dr. Downs treated her when she reported pain in spite of narcotic pain medication. (Tr. at 865.) Dr. Downs indicated that he could offer only mobilization to treat her, and he opined that she was not employable. (Tr. at 866.) Dr. Downs continues to treat Ms. Johnson to the present date.

4.    Work History

Initially after her injury, Ms. Johnson continued to work in a modified capacity at St. Mary's Hospital in the housekeeping department. After her surgery in 1996, Dr. Downs completed several reports of work ability in which he placed various restrictions on Ms. Johnson regarding the use of the right wrist with lifting limitations. (Tr. at 364-378.) On April 19, 1996,

Dr. Downs placed additional work restrictions on Ms. Johnson including a four hour per day maximum, left-hand work only and other sedentary restrictions. (Tr. at 227; 362.) Ms. Johnson also worked with Wende Morrell, a Qualified Rehabilitation Consultant to coordinate Ms. Johnson's return to work issue. (Tr. at 227.)

In August 1996, after her functional capacity assessment, Ms. Johnson remained unemployed due to the fact that St. Mary's Hospital had no work available within those restrictions. She remained off work over the next year. In the fall of 1997, St. Mary's Hospital offered Ms. Johnson a job within her restrictions as an information clerk. (Tr. at 151.) This job was memorialized in an agreement between the union and St. Mary's Hospital on September 5, 2000.  (Tr. at 151.) The memorialization agreement states that the job was created specifically for Ms. Johnson and that once she left employment, there would be no one else to take over that job. (Tr. at 151.) Ms. Johnson worked at that job from 1997 until April 2003 when the job was eliminated by St. Mary's Hospital. (Tr. at 150.)

In June 2003, Dr. Downs reported to the Minnesota Department of Economic Security that Ms. Johnson was "totally unable" to do any work. (Tr. at 584.) The form he completed was utilized to determine Ms. Johnson's eligibility for unemployment benefits. (Tr. at 584.) In February 2004, Dr. Downs stated that Ms. Johnson remained able to work under his prior restrictions of sedentary, limited use of the right arm and no more than four hours of work per day. (Tr. at 614-16.)  Dr. Downs then determined that she was no longer capable of working. (Tr. at  770.) Dr. Downs has continued to limit Ms. Johnson to no work activity since April 2003. (Tr. at 766-70; 838-39; 869-71.)

5.     Medical Expert's testimony

Dr. Andrew Steiner testified as a medical expert at Ms. Johnson's hearing. (Tr. at 17.) He testified that Ms. Johnson had right arm pain, associated with a number of surgical procedures but with no firm diagnosis. (Tr. at 916-17.) Dr. Steiner testified that the most frequent diagnosis was coxalgia, also known as complex regional pain syndrome. Coxalgia is a condition generally associated with findings including persistent edema and skin changes. Dr. Steiner testified that these findings were not demonstrated in the record. (Tr. at 917.)  He further testified that diagnostic testing was essentially negative. (Tr. at 917.) After 1997, Ms. Johnson's primary treatment consisted of osteopathic manipulation and medication. (Tr. at 917.) She was also diagnosed with chronic pain syndrome, depression, and adjustment reaction. (Tr. at 917.)  Dr. Steiner described the medical findings as minimal and concluded that Ms. Johnson did not have an impairment of listing level severity. (Tr. at 918.) Dr. Steiner concluded that Ms. Johnson could lift at least twenty pounds occasionally and ten pounds frequently, and stand for at least six hours and possibly more. He also concluded that firm and power gripping would be limited to only occasionally and handling and fine manipulation were not limited. (Tr. at 918.) He indicated there was no evidence to support an overhead reaching limitation since Ms. Johnson had full range of motion and no documented loss of strength. (Tr. at 919.) Finally, Dr. Steiner testified that the diagnosis of Dr. Downs that Ms. Johnson could not perform continued keyboard or writing activities had no objective basis. (Tr. at 919.)

6.     Vocational Expert's Testimony

Mr. Edward Utities testified as a Vocational Expert at the ALJ hearing. The ALJ asked him a hypothetical question regarding the existence of jobs available to a person of Ms. Johnson's age, education and experience given the following impairments and limitation: right

arm pain following several surgical procedures, obesity, chronic pain syndrome, depression, and

adjustment disorder, who could lift twenty pounds occasionally and ten pounds frequently, sit for

two hours and stand and walk for six hours; and should not perform more than occasional power

gripping; and could perform unskilled work only. (Tr. at 928-29.) The vocational expert testified

that a person with those limitations could perform Ms. Johnson's past work as an information

clerk. (Tr. at 929.) The vocational expert also testified that such a person could perform 40-50

occupations of assembly jobs. (Tr. at 929-30.)

        7.      Plaintiff's Testimony

        Ms. Johnson reported that she did not have full use of her right hand and arm. (Tr. at

120.)  She also reported that she takes medication which makes her tired. (Tr. at 121.) Ms.

Johnson testified that she can cook, clean, do housework and laundry and shopping with

assistance from her husband. (Tr. at 121.) She also testified that she can read, watch her

grandchildren, watch television, go out to movies and exercise. (Tr. at 123.) She also stated that

she sleeps 12 to 14 hours per day. (Tr. at 123.) She denied having any use of her right hand in

December 2003. (Tr. at 127.)

        Ms. Johnson states that she is unable to do any work due to her medications, constant

pain in her arm and hand and difficulty sitting or standing too long. (Tr. at 896.) She claims that

the medication she is taking makes her tired. (Tr. at 897.) She states that she does not use her

right hand very much, but if she forgets and uses it too much, the pain will increase and

sometimes the pain wakes her at night. (Tr. at 897-88, 914.) Ms. Johnson also claims that

depression affects her ability to maintain attention and to articulate her words. (Tr. at 908.) She

stated that she has no ability to grip with her right hand but admitted she could use a knife and

fork with both hands when she ate and use her right hand to wash her hair and use both hands

11

when she drove. (Tr. at 899-901.) She testified that she could perform a variety of activities such as washing dishes, vacuuming, laundry, cooking and grocery shopping with some difficulty. (Tr. at 903-07, 909.)

    8.    <u>The ALJ's decision</u>

The ALJ went through the five-step sequential evaluation process in determining whether Ms. Johnson is disabled.

The process begins with a determination of whether Ms. Johnson has engaged in substantial gainful activity, as defined in the Regulations, at any time since April 21, 2003, the alleged onset date of the disability. The ALJ first determined that Ms. Johnson has not worked in substantial gainful activity since the alleged onset date of April 21, 2003. (Tr. at 18.)

The next step in the evaluation process required a determination as to whether Ms. Johnson is subject to any severe physical or mental impairment. A severe impairment is defined as one that significantly limits the individual's physical or mental ability to meet the basic demands of work activity. 20 C.F.R. § 404.1520(c), § 404.1521, § 416.920(c) and § 416.921. The ALJ found Ms. Johnson to be severely impaired as defined by the regulations by status post right upper extremity surgeries, including carpal tunnel release, ganglion removal, tenosynovectomy and radial tunnel releases; and depression and/or adjustment disorder

The third step requires a comparison of Ms. Johnson's severe impairments with the impairments contained in Appendix 1 to Subpart P of the Regulations. 20 C.F.R. § 404.1520(d) and § 416.920(d). Appendix 1 contains a Listing of Impairments which describes the required level of severity for each condition. If the required severity is met, the claimant is found to be disabled. The ALJ found that based on the evidence and the testimony of Dr. Steiner, Ms. Johnson does not have an impairment or combination of impairments that meet or equals the

relevant criteria of any listed impairment. The ALJ found the testimony of Dr. Steiner to be

"credible, persuasive and uncontradicted." (Tr. at 18.) The ALJ also took into account the severe

mental impairments within the provisions of 20 C.F.R. § 404.1520a and §416.920a. This

evaluates the limitations that may result from the mental impairments in the areas of daily living,

social functioning, concentration, persistence, or pace and episodes of decompensation of

extended duration. The ALJ stated that "the claimant has mild limitations in activities of daily

living and social functioning, moderate limitation in concentration, persistence, or pace, no

episodes of decompensation of extended duration, and no evidence of the C criteria of the

Listings." (Tr. at 19.) The ALJ stated that Ms. Johnson resides in a home with her husband,

maintained a stable residence and was adequately able to care for herself and her household with

some limitations. (Tr. at 19.) Ms. Johnson stated that she had some problems going out with

people, yet she was able to go out with her husband to a crowded festival. (Tr. at 19.) Ms.

Johnson also has interacted well with treating physicians, maintained friendships and had stable

interpersonal relationships. Ms. Johnson complained of difficulties with attention and

concentration yet has been consistently oriented to time, place and person. (Tr. at 19.) The ALJ

thus concluded that Ms. Johnson has mild limitations in activities of daily living and social

functioning, moderate limitations in concentration, persistence and pace, but no episodes of

decompensation or extended duration. (Tr. at 19.) The ALJ thus concluded that the severity of

the claimant's impairments does not meet or equal the criteria of any listed impairment.

 The ALJ then proceeded to the next step to determine whether Ms. Johnson has the

residual functional capacity to perform her past relevant work or any other work existing in

significant numbers in the national economy. Ms. Johnson alleges she is unable to work as a

result of chronic pain, fatigue and depression which restrict her to standing for only ten minutes,

sitting for only thirty minutes, preclude the use of her right hand and cause difficulties with attention. (Tr. at 19.) However, the ALJ found that Ms. Johnson retains the RFC to perform a light level of work involving occasionally lifting up to twenty pounds, frequently lifting up to ten pounds, standing and/or walking for six hours in an eight-hour workday, sitting for two hours in an eight-hour workday, no more than occasional firm power gripping and unskilled work. (Tr. at 20.) The ALJ specifically found that Ms. Johnson's claim that she is incapable of all work activity to not be credible.

The ALJ found that the objective medical evidence and Ms. Johnson's course of treatment are not consistent with the severity of her allegations. Prior to the onset disability date, the injury was treated with multiple surgical procedures. Ms. Johnson claims that she continues to experience disabling levels of pain and a complete inability to use her right hand, yet x-rays and EMG findings were normal. Examinations have not yet confirmed any bony deformity of the joints or other objective evidence which would cause the limitations alleged by Ms. Johnson. (Tr. at 20.)

Ms. Johnson further reported symptoms of pain, yet has not requested a change in her medication and there were some allegations of a reduction in pain with the use of medication. Thus, the ALJ concluded that Ms. Johnson has the ability to utilize prescription medication to control her symptoms. Ms. Johnson's depression has been successfully treated with the use of medication. (Tr. at 20.)

The ALJ further considered the claimant's activities of daily living in assessing the credibility of her allegations that she is unable to perform any gainful activity. The ALJ found that Ms. Johnson was able to conduct a wide range of daily living tasks, even though she had to pace herself throughout the day. The ALJ also noted Ms. Johnson's prior work history in

evaluating her credibility. The ALJ noted that Ms. Johnson had sporadic work history with periods of unemployment in the 1980's. The ALJ also noted that in May 2003, the claimant signed documents in her application for unemployment benefits stating that she was capable of working and seeking work. This statement was found to be inconsistent with the claimant's allegations of disability during the same time period. As a result, the ALJ found that the record does not suggest a significant effort toward a return to the workplace.

Dr. Downs opinion was taken into account in its determination, however, the ALJ decided that Dr. Downs' opinion was taking into account the statements of pain reported by Ms. Johnson, which were found to not be fully credible by the ALJ. In assessing Dr. Down's opinion, the ALJ agrees with the opinion of Dr. Steiner that absent evidence of pain generators with no evidence on limits on regular gripping or fine manipulation and little objective evidence of abnormalities, these limitations were based on Ms. Johnson's report of pain, which the ALJ found to not be fully credible. (Tr. at 22.)

The next step in the sequential evaluation involved a determination as to whether the claimant could return to any of her past relevant work. This determination requires consideration of vocational factors. The neutral vocational expert in this case stated that the claimants past relevant work as a nurse's aide could not be performed. However, it was found that the claimant could perform a number of jobs which are available in the Minnesota and national economy.

Based upon her analysis of the five-step process for determining if a claimant is disabled, the ALJ found that the claimant did not meet the statutory criteria for a finding of disability.

### III.  STANDARD OF REVIEW

Section 205(g) of the Social Security Act (42 U.S.C. 405(g) authorizes judicial review of the Commissioner's final decision. When the Appeals Council denies the review, the ALJ's

decision stands as the final decision of the Commissioner. 20 C.F.R. 416.1481. The Act provides

that "the findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. 405(g). Thus, judicial review is limited to

determining whether substantial evidence supported the ALJ's findings and whether the ALJ

applied the correct legal standards in reaching her decision. See, Warburton v. Apfel, 188 F.3d

1047, 1050 (8th Cir. 1999).

Substantial evidence is more than a "mere scintilla" of evidence but less than a

preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated

Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court does not try cases de

novo, resolve conflicts in the evidence or decide questions of credibility. See, Naber v. Shalala,

22 F.3d 186, 188 (8th Cir. 1994); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). If

substantial evidence supports the ALJ decision, it must be affirmed; the decision may not be

reversed simply because substantial evidence might also support a different conclusion. See,

Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). The ALJ's findings must be upheld if they

are supported by substantial evidence in the record as a whole. Miller v. Sullivan, 953 F.2d 417,

420 (8th Cir. 1992); Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991). The Court must do

more than examine the record for that substantial evidence, if any. Turley v. Sullivan, 939 F.2d

524, 528 (8th Cir. 1991). Judicial review of defendant's decision is limited to a determination of

whether the decision is supported by substantial evidence on the record as a whole.  42 U.S.C.

§405(g); Morse v. Shalala, 32 F.3d 1228, 1229 (8th Cir. 1994).  Substantial evidence is enough

evidence that a reasonable person might accept as adequate to support a conclusion. Moad v.

Massanari, 260 F.3d 887, 890 (8th Cir. 2001).  Where such evidence exists, a court is required to affirm defendant's factual findings. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

The analysis conducted by the court must include evidence in the record which detracts from the weight of the evidence supporting the ALJ's decision. Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998).  Thus, the court must consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary.  Id.

The Court is required to review the administrative record as a whole and to consider:

1.      The credibility findings made by the ALJ;

2.      The education, background, work history, and age of the plaintiff;

3.      The medical evidence provided by treating and consulting physicians;

4.      The plaintiff's subjective complaints and descriptions of pain, impairment, and physical activity;

5.      Any corroboration of plaintiff's impairments by third parties; and

6.      The testimony of vocational experts based upon proper hypothetical questions setting forth plaintiff's impairments.

Cruse v. Bowen, 867 F.2d 1183 (8th Cir. 1989) (citing Brand v. Secretary of HEW, 623 F.2d 523, 527 (8th Cir. 1980)).

However, in reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

## IV.  LEGAL FRAMEWORK

A claimant seeking disability insurance benefits bears the burden of proving that she is disabled within the meaning of the Social Security Act. 20 C.F.R. §416.912(a); Young v. Apfel, 221 F.3d 1065; 1069 n.5 (8th Cir. 2000). In order to establish disability, a claimant must

establish the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months.

The Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." 42 U.S.C. § 1382(a); <u>Locher v. Sullivan</u>, 968 F.2d 725, 727 (8th Cir. 1992). Disability means that the claimant is unable to work by reason of "medically determinable" physical or mental impairment or impairments. 42 U.S.C. §1382c(a)(3)(A). The impairment must be so severe that the plaintiff not only cannot do the work he or she did before, but also cannot do any other kind of substantial gainful work. 42 U.S.C. §1382c(a)(3)(A). The impairment must last for twelve months or be expected to result in death. 42 U.S.C. § 1382c(a)(3)(A). The Social Security Regulations require the Administrative Law Judge to apply a five-step sequential evaluation process in determining whether the claimant is disabled. 20 C.F.R. 404.1520. The steps, in order, are:

1. Is the claimant working in substantial gainful employment? 20 C.F.R. § 404.1520 (b);

2. Does the claimant have a medically determinable impairment or combination of impairments which is severe? 20 C.F.R. § 404,1520 (c).

3. Does the severe impairment or combination of impairments meet or equal in severity the listing of impairments? 20 C.F.R § 404.1520 (d).

4. Does the claimant have the capacity to do her past relevant work? 20 C.F.R. § 404.1520(e)

5.      If the claimant cannot perform past relevant work, does the claimant have

the capacity to do any other work existing in significant numbers in the

national economy on a sustained, competitive level?

20 C.F.R. §404.1520 (f)

If at any time in evaluating the claimants disability claim under the five-step process it is

determined the claimant is or is not disabled, the analysis is at an end. 20 C.F.R. § 404.1520 (a).

Plaintiff must then demonstrate that her impairments render her unable to engage in any

substantial gainful activity. 42 U.S.C. § 1382c(a)(3).

The claimant bears the burden of proving the existence and severity of any functional

limitations caused by her impairments, as well as the burden of proving that her impairment

precludes her from performing her past relevant work. Bowen v. Yuckert, 482 U.S. 137, 146 n.5

(1987); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If she meets that burden, the

burden shifts to the Commissioner to establish other jobs that claimant can perform. Cunnigham

v. Apfel, 222 F.3d 496, 501 (8th Cir. 2000).

## V.  CONCLUSIONS OF LAW

In this present case, it is undisputed that Ms. Johnson is not working in sustained gainful

employment and she has severe impairments. It is also undisputed that Ms. Johnson's severe

impairments do not meet or equal a listed impairment and her condition prevents her from

performing her past relevant work. (Tr. at 14-24.) The only dispute is whether Ms. Johnson is

capable of performing other work existing in significant numbers in the economy. Ms. Johnson

argues that the ALJ improperly evaluated the medical evidence and therefore improperly

determined her RFC, creating an incorrect hypothetical for the vocational expert based on that

faulty RFC.

A. <u>The ALJ Properly Evaluated the Medical Evidence</u>

     1.    <u>The medical testimony of Dr. Steiner</u>

Ms. Johnson argues that the ALJ relied too heavily on the medical testimony of Dr.

Steiner, the expert medical opinion at the hearing. Specifically, Ms. Johnson reinforces her

argument that Dr. Steiner is not the treating physician of Ms. Johnson, thus does not have

sufficient knowledge of Ms. Johnson's impairments.

A treating physician's opinion is to be afforded "controlling weight" when the opinion is

"well-supported by medically acceptable clinical and laboratory  diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §

404.1527(d)(2).[1]  Generally, the opinions of doctors who do not examine the plaintiff do not

ordinarily constitute substantial evidence to support a finding of non-disability. <u>Nevland v.</u>

<u>Apfel</u>, 204 F.3d 853, 858 (8th Cir. 2000).  The ALJ is required to give more weight to the

opinion of a treating source versus a non-treating source.  <u>Singh v. Apfel</u>, 222 F.3d 448, 452 (8th

Cir. 2000).  Even where a treating physician's opinion is not afforded "controlling weight", "a

treating physician's opinion should be accorded substantial weight." <u>Prince v. Bowen</u>, 894 F.2d

283, 285 (8th Cir.1990).

However, "[t]he conclusions of any medical expert may be rejected 'if inconsistent with

the medical record as a whole.'" <u>Davis v. Apfel</u>, 239 F.3d 962, 967 (8th Cir.2001).  An ALJ

may "discount or even disregard the opinion of a treating physician where other medical

assessments are supported by better or more thorough medical evidence, or where a treating

---

[1] Under the regulations, a "treating source" is a physician, psychologist, or other acceptable
medical source who has an "ongoing treatment relationship" with the claimant, i.e., the claimant
has seen the physician "with a frequency consistent with accepted medical practice" for the
condition. <u>See</u> 20 C.F.R. § 404.1502.

physician renders inconsistent opinions that undermine the credibility of such opinions." <u>Prosch</u>
<u>v. Apfel</u>, 201 F.3d 1010, 1013 (8th Cir.2000).

In <u>Hackner v. Barnhart</u>, 459 F.3d 934, 939 (8th Cir. 2006), the court stated that the
regulations specifically provide that the opinions of non-treating physicians may be considered.
See also, 20 C.F.R. 404.1527(f). In <u>Harris v. Barnhardt</u>, 356 F.3d 926, 931 (8th Cir. 2004), the
court stated that the ALJ may consider the opinion of an independent medical advisor as one
factor in determining the nature and severity of an impairment. The ALJ found the testimony of
Dr. Steiner to be "credible, persuasive and uncontradicted." (Tr. at 18.)

Ms. Johnson argues that the ALJ should have given greater weight to Dr. Downs' opinion
because he has been her treating physician for a number of years. However, the other physicians
and health care providers that examined Ms. Johnson during the same period as Dr. Downs
reached a different conclusion regarding her limitations. The conflicting conclusions decrease
the credibility of the conclusions of Dr. Downs. The opposing conclusions included a functional
capacity assessment conducted in August 1996 which concluded that Ms. Johnson could sit for
six to seven hours per day. (Tr. at 463.)  In April 1997, Dr. Call stated that Ms. Johnson had an
extremely aggressive surgical history for "largely subjective discomfort." (Tr. at 811.) He also
stated that no surgery was warranted and concluded that Ms. Johnson had only a 5 percent rating
of permanent partial disability. (Tr. at 812.) In December 1999, Dr. Klassen stated that Ms.
Johnson demonstrated poor compliance on the exam, but she had a full range of wrist and joint
motion, a slight weakness in her intrinsics and had normal strength in all other areas. (Tr. at
154.)

Dr. Steiner's medical opinion was also consistent with the findings of state agency
physicians, who reviewed the evidence and concluded that Ms. Johnson could perform light

work.  (Tr. at 605.) The state physicians agreed with Dr. Steiner that the opinion of Dr. Downs regarding Ms. Johnson's restrictions did not "correlate with imaging studies, EMG's, or physician findings." (Tr. at 608.)  Dr. Sheetz reviewed x-rays upon a referral from Dr. Downs in June 2002 and he concluded that a wrist fusion would provide no benefit. (Tr. at 690.) In addition, Dr. Sheetz recommended that Ms. Johnson "increase her use of her extremity and be referred to therapy for range of motion exercises and strengthening with no limitation." (Tr. at 690.)

In January 2003, Dr. Vorlicky reviewed Ms. Johnson's medical records and independently examined Ms. Johnson. Dr. Vorlicky concluded that Ms. Johnson had "full passive range of motion" with the right wrist. (Tr. at 816.) Dr. Vorlicky also concluded that Ms. Johnson had no forearm or thenar atrophy on either side, intact sensation and brisk and symmetric reflexes. (Tr. at  816.) Dr. Vorlicky indicated that neither surgical treatment not pain management were recommended. (Tr. at 825.) The doctor also stated that Ms. Johnson had no need for orthopedic intervention and that it was "not clear to me why she cannot perform sedentary work and it really does not make sense to me that she cannot use the phone." (Tr. at 825.) Dr. Vorlicky also concluded that he would not restrict her in anyway and he believed Ms. Johnson "may have some symptom magnification." (Tr. at 825.) Regarding Dr. Downs' opinion of disability, Dr. Vorlicky noted that "I can find no objective measures that would describe a loss of motion or weakness or loss of sensation, and she continues to have normal nerve conduction studies." (Tr. at 825.)

These other conflicting opinions by doctors treating Ms. Johnson during the same time period as Dr. Downs undermines the credibility of his opinion. Thus, Dr. Downs basis for his findings appear to be largely based on the subjective pain reported by Ms. Johnson to Dr. Downs

over the years. Since the ALJ determined that the credibility of Ms. Johnson is questionable, Dr.

Downs's opinion was determined to be given less weight than the objective doctors who tested

Ms. Johnson. (Tr. at 22.)

Thus, the ALJ reached the correct decision in choosing to take into account all the

medical evidence when making its decision. Dr. Downs's testimony is not to be given greater

weight in this case due to the fact that the objective evidence fails to support Dr. Downs'

opinion. See 20 C.F.R. 404.1527(d)(3)-(4) (stating that the better supported and more consistent

with the record an opinion is, the more weight assigned to that opinion). See Hackner v.

Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (concluding that a treating physicians controlling

weight must be supported by reviewing physicians' opinion despite treating physician opinion to

the contrary where treating physicians' opinion was not supported by objective findings).

The ALJ correctly concluded that Dr. Downs' opinion was not supported by objective

evidence and was not consistent with other substantial evidence on the record. (Tr. at 22.)

        2.    <u>Pain Management</u>

Ms. Johnson states that the overwhelming evidence is that she suffers from severe

chronic pain and that it cannot be measured on an objective basis. However, multiple physicians

concluded that there was not identifiable basis for Ms. Johnson's chronic pain and at least two

physicians indicated that Ms. Johnson had symptom magnification or did not provide full effort.

(Tr. at 155, 690, 825.)

Dr. Steiner testified that the severity of Ms. Johnson's complaints of pain were

not objectively verifiable.  Ms. Johnson argues that since the ALJ judge relied upon Dr. Steiner's

opinion she completely rejected her duty under <u>Polaski</u>.[2] <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th

Cir. 1984). However, since Ms. Johnson is alleging disability as a result of subjective

complaints, the ALJ evaluated the entire record, including the claimant's testimony within the

provisions of <u>Polaski v. Heckler</u>.  (Tr. at 19.) (<u>Id.</u>) The ALJ specifically cited the decision in

<u>Polaski</u> and made her credibility findings in accordance with <u>Polaski</u> and agency regulations.

(Tr. at 19.) (<u>Id.</u>) In <u>McKinney v. Apfel</u>, the ALJ specifically cited the holding in <u>Polaski</u> while

reaching the conclusion that McKinney's complaints were not credible. 228 F.3d 860, 864 (8th

Cir. 2000). This is also true in this matter. The ALJ cited to the <u>Polaski</u> factors and took them

into account when determining the credibility of Ms. Johnson. <u>Polaski v. Heckler</u>, 739 F.2d 1320

(8th Cir. 1984). The ALJ judge did take into account all the factors in order to reach her

decision. The fact that the ALJ judge relied on an opinion other than Dr. Downs does not render

her decision incorrect nor does it show that the ALJ rejected her duty. The ALJ properly

---

[2] <u>Polaski v. Heckler</u> states as follows:

      The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. [Emphasis in original.] <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984).

weighed Dr. Down's opinion, Ms. Johnson's complaints of pain and other factors to reach the correct decision.

In <u>Vandenboom v. Barnhart</u>, 421 F.3d 745 (8th Cir. 2005), the ALJ gave less weight to a physician's findings due to inconsistencies in the medical record as well as the physician's failure to document objective medical evidence to support the plaintiff's subjective complaints. This case is similar due the inconsistencies in the medical record and a lack of objective medical evidence to support Ms. Johnson's subjective complaints.

The ALJ also concluded that while Ms. Johnson had been prescribed OxyContin since 2003, the record reflected that it worked only sporadically, yet Ms. Johnson did not request a change in medication. (Tr. at 20.) Thus, the ALJ concluded that Ms. Johnson has the ability to utilize prescription medication to control her symptoms. (Tr. at 20.) Ms. Johnson argues that the ALJ's finding places the burden on a layperson to inform her doctors that they should change prescriptions. (Pl's brief at 18.)  However, Ms. Johnson should have reported her continued pain to her physician or taken other steps to seek alternative medications to alleviate her pain if the pain was indeed disabling as she claims. Ms. Johnson testified that the use of OxyContin made her tired, however, the record prior to the hearing does not show that Ms. Johnson had any complaints of side effects with the exception of her statement at the ALJ hearing. (Tr. at 897.). These inconsistencies in her testimony undermine Ms. Johnson's credibility. Further, it shows that the ALJ reached the correct conclusion taking all of the medical evidence into account and not just the subjective complaints of pain from Ms. Johnson.

B. <u>The Residual Functional Capacity was properly evaluated</u>

A claimant's RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as

pain, may cause physical or mental limitations or restrictions that may affect . . . her capacity to do work-related physical and mental activities." SSR 96-8p.  The RFC is an assessment of the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."[3]  SSR 96-8p.

The RFC assessment is "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' - - i.e., opinions about what the individual can still do despite . . . her impairment(s)."  SSR 96-8p. The RFC assessment "must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p.

Dr. Steiner did not take into account the chronic pain syndrome as a limiting factor in his decision. The ALJ considered the evidence in the record as a whole and concluded that Ms. Johnson retained the RFC to perform a light range of work that did not require lifting more than twenty pounds occasionally and ten pounds frequently; sitting for two hours and standing and walking for six hours; no more than occasional firm power gripping; and work that was unskilled.  (Tr. at  20.)

1.   The credibility determination of Ms. Johnson

In assessing Ms. Johnson's RFC, the ALJ noted the lack of objective evidence supporting Ms. Johnson's subjective complaints of pain. (Tr. at 20.) The ALJ found that the objective medical evidence and Ms. Johnson's course of treatment are not consistent with the severity of her allegations. Prior to the onset disability date, the injury was treated with multiple surgical procedures. Ms. Johnson claims that she continues to experience disabling levels of pain

---

[3]A "regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p.

and a complete inability to use her right hand, yet x-rays and EMG findings were normal.

Examinations have not yet confirmed any bony deformity of the joints or other objective

evidence which would cause the limitations alleged by Ms. Johnson. (Tr. at 20.)

The evidence includes the fact that the diagnostic tests, including x-rays, MRI and

EMG and nerve conduction studies were negative.(Tr. at 211, 247, 250, 263, 299, 304-05, 307,

314, 319 ,323,750-52, 755, 758-59, 867.) This absence of objective evidence supports the ALJ's

assessment. See, Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).

The ALJ considered the physician opinion evidence as well. As previously stated,

Ms. Johnson argued that the ALJ should have given greater weight to the opinion of Dr. Downs.

However, this court finds that the ALJ properly took into account the opinions of all the

physicians, including Dr. Steiner whom the ALJ found to be credible. Dr. Steiner testified that

his RFC opinions did not take into account the chronic pain syndrome as a limiting factor. This

court finds that the ALJ properly determined the credibility to Dr. Steiner's testimony and relied

upon it correctly for her decision. In Cox v. Barnhart, the court determined that the ALJ was in a

better position to evaluate credibility and thus deferred to the ALJ's findings as long as they

were supported by good reasons and substantial evidence. 471 F.3d 902, 907 (8th Cir. 2006).

Further, the ALJ found that Ms. Johnson has been involved in the reclassification

of her worker's compensation benefits, which is indicative of a possible motive for monetary

gain. (Tr. at 21.) Ms. Johnson applied for unemployment compensation and signed a document

that stated that she was "capable of working" with the limitations imposed by Dr. Downs. While

Ms. Johnson states that the ALJ went out of her way to find things to hold against Ms. Johnson,

the fact remains that she did state she was capable of working with limitations. Ms. Johnson

alludes to the fact that it was said because she had bills to pay and was in desperate times when

she was unemployed. However, it appears that Ms. Johnson changes her story to try and meet the needs of where she is seeking a benefit. In order to get unemployment benefits, she is willing to say she is capable of working with limitations, however when she is trying to get social security benefits, she states that she is unable to work within those same limitations. This damages her credibility. The ALJ concluded reasonably that Ms. Johnson's application for unemployment benefits was inconsistent with her claimed disability. See, <u>Jernigan v .Sullivan</u>, 948 F.2d 1070, 1073-74 (8th Cir. 1991) (inconsistencies on record, including application for unemployment insurance showed lack of credibility).

        2.  <u>The determination of Ms. Johnson's capabilities.</u>

The ALJ properly took into account the testimony of Dr. Steiner that Ms. Johnson could perform a light range of work. (Tr. at 22, 918.) Dr. Steiner reviewed the medical evidence, including the records submitted by Dr. Downs and stated that the diagnostic testing was negative and that the medical findings of record were minimal.  (Tr. at 918.) He further testified that Dr. Down's opinion regarding Ms. Johnson's ability to use a keyboard or write had no objective basis. (Tr. at 919.)  Dr. Steiner's opinion was consistent with the findings of state agency physicians, who also concluded that Ms. Johnson could perform a light range of work upon review of the medical evidence. (Tr. at 605.) They noted that Dr. Downs' opinion regarding Ms. Johnson's restrictions did not "correlate with imaging studies, EMG's or physician findings." (Tr. at 608.)

The ALJ reasonably concluded that the objective medical evidence was not consistent with the severity of Ms. Johnson's allegations. (Tr. at 20.) Objective evidence is a useful indicator "to assist us in making reasonable conclusions about the intensity and persistence of your symptoms, such as pain, may have on your ability to work." 20 C.F.R.

404.1529(c)(2). The ALJ also took into account all the other evidence in making her determination, such as the lack of Ms. Johnson's muscle atrophy, few strength deficits and pain free range of motion when distracted. (Tr. at 20.)

Ms. Johnson resides in a home with her husband and is able to adequately care for herself and her household with some limitations. Ms. Johnson contests the conclusion by the ALJ that Ms. Johnson does have the ability to perform housework while she remains home during the day. The ALJ determined that since she is capable of doing something slowly at her own pace, she is therefore able to perform a wide range of activities of daily living on a sustained and routine basis. The ALJ's decision is correct due to the fact that Ms. Johnson has been diagnosed as having the ability to light amount of weight and is able to stand for a few hours at a time. The ALJ observed that Ms. Johnson claimed an inability to use her right hand, yet her daily activities failed to document that she had a total inability to use her right hand. (Tr. at 21.) The ALJ concluded that she performed a wide range of activities on a routine basis. (Tr. at 21, 123, 903-07, 909.)

Thus, the ALJ's consideration of Ms. Johnson's daily activities was reasonable and appropriate.

3.    Vocational Factors

Since the court has determined that the correct determination was made regarding the RFC of Ms. Johnson, the focus then shifts to determine the vocational factors in regards to Ms. Johnson's work. First, the analysis examines if Ms. Johnson could return to any of her past relevant work. The vocational expert in this case, Edward Utities, testified that Ms. Johnson had past relevant medium skilled work as a nurse's aid and semi-skilled sedentary work as an information clerk. (Tr. at 22.) The evidence though shows that the claimant's work as an

information clerk was performed with special considerations and therefore, the ALJ did not consider the information clerk job to be past relevant work. The work as a nurse's aid was outside the limits of Ms. Johnson's RFC.

Since Ms. Johnson does not have past relevant work, the Commissioner must then prove that a significant number of jobs exist in the national economy which the claimant could perform. Mr. Utities testified that with Ms. Johnson's given limitations, there were twenty-nine hundred unskilled light jobs available in the Minnesota economy and five thousand jobs available in the Minnesota regional economy as bench work assembly. (Tr. at 23.)

Thus, the ALJ made the proper assessment of Ms. Johnson's medical records and a proper RFC was given to the vocational expert to determine Ms. Johnson's ability to work. Since the vocational expert did determine properly that Ms. Johnson is capable of finding employment, the Court finds that the ALJ's decision is reasonable and proper.

## VI.  RECOMMENDATION

The ALJ properly assessed the evidence and the record as a whole. The ALJ's assessment of Ms. Johnson's credibility is supported by substantial evidence.

For the foregoing reasons, it is hereby recommended that:

1.  Plaintiff's Motion for Summary Judgment be denied [Docket No. 11];

2.  Defendant's Motion for Summary Judgment [Docket No. 18] be granted.

Dated: December 6, 2007                    s/ *Franklin L. Noel*
                                           FRANKLIN L. NOEL
                                           United States Magistrate Judge

30

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 26, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.